## M. SOLMSON & CO. v. BREDIN et al.

(Circuit Court of Appeals, Fourth Circuit. February 21, 1905.)

### No. 577.

1. PATENTS—INVENTION—WEATHER STRIPS.

The Sims patent, No. 424,905, for a flexible metallic weather strip, consisting of a thin strip of zinc doubled on itself in the center to form a rib, which projects into a groove in the edge of a sliding window sash, while the edges of the strip are turned at right angles to the rib to make a flat back, which is fastened in the recess of the casing, was not anticipated and shows invention. Claims 2 and 3, also, *held* infringed.

2. SAME—INFRINGEMENT.

The particular form of the back of a patented weather strip, or the manner of fastening it to a window casing by making holes therein for the tacks used, are not essential parts of the invention, and a variation therein does not avoid infringement, where the principle of the invention is appropriated.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 371, 377.]

Appeal from the Circuit Court of the United States for the District of Maryland.

For opinion below, see 132 Fed. 161.

C. M. Clark and Thomas W. Bakewell, for appellant.

L. S. Bacon and J. H. Milans, for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and WADDILL, District Judge.

GOFF, Circuit Judge. This appeal is from a decree of the court below in favor of the appellees, adjudging claims 2 and 3 of patent No. 424,905, granted April 1, 1890, to A. C. Sims, for an improvement in weather strips, to be valid and infringed. The bill asked for an injunction and for an accounting. The answer averred that the device of the patent was anticipated, and invalid for lack of patentable invention, and that the appellant had not infringed it.

The assignments of error charge that the court below erred in finding that the appellant had infringed the patent in suit, in not adjudging that the letters patent were invalid, in granting the injunction prayed for, and in not dismissing the bill. The questions before this court are: First, is the patent valid? Second, has it been infringed by the appellant?

The subject-matter of the patent in suit relates to metal weather strips for windows. In the application of the strip, it is placed and secured in the bottom of the runways of a window; the strip having a part which projects into a groove in the sash. The inventor states:

"This invention relates to weather strips for windows fitted with sliding sashes, and has for its object to provide a simple, inexpensive, and durable device, which will answer fully the purpose for which it is intended. * * * To this end my invention consists in the peculiar construction and combination of the aforesaid frame or casing, a metal weather strip, and the sliding sash, substantially as will be hereinafter more fully described and claimed. * * * The sides of the frame or casing are recessed, * * * to receive the base of the weather strip, so that the latter will lie flush with the inner side of the casing. The sliding sashes * * * are provided on opposite sides with inwardly projecting grooves of such dimensions that they will fit the projecting ribs. In this manner it will be seen that these ribs or projections, by fitting into the aforesaid recesses of the corresponding sides of the sliding sashes, effectually exclude rain, snow, or dust, without in the least interfering with the easy operation of the sash."

The second and third claims of the patent declared on in the bill are as follows:

"(2) As an improved article of manufacture, a metallic weather strip, composed of a flat strip of suitable metal, bent or doubled longitudinally to form a raised rib at right angles to the flat base, and provided on opposite sides of said ribs with a series of equidistant apertures, substantially as set forth. "(3) The combination of the frame or casing recessed on its inner sides, the metallic strips provided with flat bases and having projecting ribs extending centrally at right angles to the bases, the latter fitting in the recesses of the casing, and the sliding sash frames grooved on opposite sides to receive the projecting ribs of the casing, substantially as set forth."

A careful study of the testimony impels us to concur in the conclusion reached by the court below, and as the reasons for reaching that result are clearly stated in the opinion of that court, we quote and adopt portions of it as follows:

"The complainants' device, which is known to the trade as the 'Chamberlain Metal Weather Strip,' is made of a thin strip of zinc, which has been doubled upon itself to form a projecting rib, with sides bent outwardly at right angles, so as to form a base. This shaped device is placed in the recess of a window frame, the sliding sash of which has been grooved so that the projecting rib of the metal strip projects into the groove and fits in it sufficiently tight to exclude wind and dust, but allows the sash to be easily moved up and down. The strip is made fast in the recess either by being tacked down, or is sometimes applied in actual use, when practical, by being inserted under the ad-

joining strip of beading. The advantage claimed for this form of construction is thus stated in the specifications of the patent:

" 'By constructing the metallic strips as shown in the drawings—that is to say, forming the raised part or rib, D, by doubling the metal upon itself, leaving the narrow space, d,—a certain amount of elasticity is given to this part, so as to enable it to fit closely in its appropriate groove, E, of the sliding sash, thereby taking up wear, so as to insure a close fit at all times therein.'

"The defendant's device is in all respects similar, except that the strip of zinc intended to be secured in the recess of the window frame is doubled twice upon itself, so as to form two parallel ribs, and the groove in the sliding sash has inserted in it a similarly formed metallic strip doubled upon itself either once or twice, and forming ribs which interfit with the rib or ribs of the stationary member fixed in the recess of the window frame. The defendant's device may be made either with a flange on one side only, or the flange may be dispensed with and the metallic rib secured in place by tacks driven through the bottom of the groove formed by the walls of the double rib. In actual use, however, the proof shows that it has been only used commercially by tacking down the flanges, just as the complainants' device is intended to be used, and is used.

"In support of the defense of noninfringement, defendant relies upon the different manner of attaching the stationary metal strip to the recess of the window frame. It is claimed that the defendant does not infringe the second clause, because his metal strips are not provided 'on opposite sides of said rib with a series of equidistant apertures,' through which the tacks or nails or screws may be inserted to clamp the strip to the wood surface of the recess of the window frame, but tacks or nails are driven through the thin strip of metal, without special attention to their being equidistant, and without previously prepared perforations. This, it seems to me, is an immaterial difference. The description in the second claim of the method used to fasten the strip to the frame is not of the substance of the device or of the invention. It is only a matter of detail, which could not give patentability to the device or affect its patentability. It is further urged that claim 3 is not infringed because it described the rib as being located centrally with reference to the base, while in the defendant's device the rib is either more to one side of the center of the base on one side, or sometimes may be omitted altogether. The word 'centrally' does not necessarily mean in the exact center, and the exact center is not called for in any part of the specification. All that is made essential is that the projecting rib shall fit into the groove made in the sliding sash to receive it. It is also urged, in support of the defense of noninfringement, that claim 3 is for a combination of a frame or casing recessed on its inner side with the metal strip, having its flat bases fitting in the recesses of the casing, while the strip of the defendant and the strip of the complainants, as actually applied, is not laid in any specially grooved out recess of the frame, but is laid in the bottom of the recess made by the runway, in which the sash slides up and down. To say that the bottom and sides of the runway do not constitute a recess, and is not the recess intended by the patent, is to ignore the obvious fact. It is true that, if the original sash and frame fitted tightly, it might be necessary, on introducing the thickness of the metallic strip between the two, to either score out the depth of the recess or to slightly plane off the surface of the opposing edge of the sliding sash; but that is a mere matter of ordinary carpentering. The inventor in his specification says:

" 'In practice I manufacture these metallic strips in suitable lengths, which will easily be cut by the purchaser to the right size to fit the windows or doors for which they are intended, to which they can readily be applied by any person of ordinary intelligence, and without the assistance of skilled labor.'

"This seems to imply, as the actual application has in fact demonstrated, that the ordinary runway in which the sliding sash moves up and down in the casing is the recess mentioned in the specification and claim of the patent, and it does not require skilled labor to so apply it. That the defendant may possibly, in some instances, make a metal strip having the base only on one side of the rib, does not, I think, answer the charge of infringement. It is

in all essentials the metallic weather strip of the complainant, with a rib to some extent elastic, because made of thin metal doubled upon itself. It required no invention to omit the base on one side of the rib. It is the same device, only less complete. I think the defense of noninfringement has failed.

"The defense urged with more confidence by the defendant is lack of invention in view of the former state of the art. It is urged that runways of metal having a rib centrally placed and a base on each side to form a track for a sliding door was a well-known device, and it is urged that the metallic strip of the complainants, with its rib and similar bases, is anticipated by it; but the use is so different and the purpose so different, and the construction of the metal track· so rigid and the rib so broad and inelastic, that I cannot see that one would suggest the other, and in point of fact it would appear that it never did. The numerous patents put in evidence are either for various kinds of substitutes for the ordinary sliding sash, with its beading and recessed runway, or for some kind of a joint-closing device for doors or hinged windows; but, after a careful consideration of them all, I am of opinion that they do not fairly anticipate the device of the patent as applied by the inventor and by the complainant. They do show that for a long time the attention of mechanics and inventors has been directed to the perfecting of some inexpensive and simple joint-closing device to be applied to windows and doors. Not one of them would appear to have gone into general use, and it is a strong argument in favor of the novelty of the complainants' device that it has by its merits secured against so many competitors a commercial success, which is a practical indorsement of its usefulness. The general manager of the corporation which manufactures the metal strips of the defendant at one time handled and advocated the use of the complainants' device.

"It is further urged that the English patent No..9,591, July 2, 1888, to Edward Thorp, is an anticipation. Very persuasive proof has been adduced to show that the actual date of the invention of the complainants' device antedates the date of the sealing of the Thorp patent, which was November 23, 1888; but, without entering upon or deciding that question of fact, I am of opinion that the Thorp patent, so far as it approaches to the complainants' device, is too obscure and indefinite to amount to anticipation. The essentials of the complainants' device consist in the elastic quality of the rib, arising from its being of a thin metal doubled upon itself and still capable of further compression, and the adaptability of the bases of the rib for the insertion in the ordinary recess of the runway of the sliding sash. Neither of these essentials is suggested in any manner in the specifications of the Thorp patent. By a close study of one of the drawings representing the Thorp bar, there is seen a drawing of a U-shaped bar of material about one-eighth of an inch thick, represented in combination with a hinged joint; but it does not seem to me that the drawing in any way leads the mind toward the thin metallic strip used by the complainants.

"I am of opinion that the patent owned by the complainants is a good and valid patent, that the infringement is obvious, and that the complainants are entitled to the relief prayed for."

The decree appealed from is affirmed.